Next case on the morning's docket is People v. Taylor-Killen with Polly Hampton and Kelly Stacey. Sam, are you ready for safe? Polly Hampton And several members of Taylor's family are in the courtroom this morning. Taylor is charged with criminal sexual abuse and criminal sexual assault. And this is an extremely fact heavy case. And the brief, make it clear to the court, because I'm sure the court is aware that this is a very factually heavy case. The alleged victim in this case was, she was 14 years old, it was 53 days before her 15th birthday. There were two charges filed against Taylor. The one being the misdemeanor criminal sexual abuse based on just the act of, the act of sex. And then there was the felony alleging the use of force. And the case initially, it was not reported the day of the incident, it was reported the next day. And it came to the attention of the authorities after the alleged victim gave a note to her mother. And she gave this note to her mother at the insistence of a young man named Devin Cole. And one of the arguments that we made is that one of the key problems in the case is that Devin Cole was not cross examined regarding bias during the trial. This is a trial that lasted three hours. This young man received five years in the Department of Corrections after a trial that lasted three hours. Our argument, we of course make an ineffective assistance of counsel argument. He was represented by Eddie Veltman, who Mr. Veltman clearly has been doing criminal defense law much longer than I. And he was, so we have an ineffective assistance counsel claim. And we also have claims that the jury heard some improper opinion testimony. And before I get into the ineffective assistance counsel, I would like to address the comments that the jury heard that we believe was crucial to the outcome of this case. And that there could have been a different outcome had the jury not heard this testimony. The basis of this case was consent. It was a consent defense from the very beginning. And the victim, the alleged victim, was given a rape kit. And the state called an RN whose name was April Lowe. And during her testimony, the state, there was questioning about the incidence of vaginal tearing. And the defense attorney, rightly so, asked questions about the absence of vaginal tearing. And she began to give an answer then on redirect that the incidence of vaginal tearing was uncommon. And Mr. Veltman objected. And his objection was based on her giving medical opinion testimony. And that objection was sustained. And what happened then is that Ms. Lowe went on, and I'll read from the record. The court, in sustaining Mr. Veltman's objection, specifically said, I'm going to sustain the objection to medical opinion. You've asked her about observations. If that's her observations, and observations are admissible, but if you're asking her about her medical opinion on the likelihood of vaginal tearing, I'll sustain objection to that. Do you understand the distinction between what she's experienced? And the prosecutor answers, yes. The next question by the prosecutor was, if I understand correctly, in your experience, vaginal tearing is a rare circumstance of sexual abuse and sexual assault cases. And the answer was, it's uncommon. And that was the end of her testimony. What happened then? Was there an objection addressed to the court that that was against his prior ruling? It was not. There was no objection. There was no request that that comment be disregarded and that the jury disregard it. The last thing that this jury heard from the only medical person in the case was this ringing in the ears that vaginal tearing is uncommon. Isn't that an indication that Mr. Veltman thought it was an observation and not a medical opinion? And that's why he did not, or it would appear that he was aware that the judge was drawing this distinction. He heard the answer. He did not make an objection. And he did not make an objection. And what our position is is that a rose by any other name is still the same. You can say it was rephrased in your experience, but yet it was still the same. It was still her giving a medical opinion on the incidents. And she was not vordered as an expert. Was she giving a medical opinion when she said there was no vaginal tearing? Was that an observation or a medical opinion? That was an observation. It was absolutely uncontroverted that there was no vaginal tearing in the case. And so what we believe is that this error alone. There's no question she's a nurse that works in the emergency room and sees cases of this type over her career on, I guess, a repeated basis. That's correct. And it appears she stated this based on her experience. That's correct. And so when she was testifying about her experience, rather than just her observations, the trial judge clearly limited what she could testify about to her observations. And in this case, not her experience. Are you saying that this is one of the grounds for ineffective assistance to counsel? So, actually, this does not fall under the ineffective assistance. Then how is it preserved for our review then? So because there was an objection made, Mr. Feltman did make the objection, and the court's ruling was clear. What happened is that the jury heard this testimony, the bell was rung, and we believe there could have been a different outcome in this case had this improper Well, had Mr. Feltman objected to it and asked for an instruction right then limiting and admonishing the jury, that may have cured it, right? I believe so. Yes, Your Honor. So are you couching this in ineffective assistance to counsel? Or are you just some other prejudicial effect on the jury? It's both. And it goes both to, so it's not a primary part of our ineffective assistance claim because the objection was made. It's a stand-alone argument here. It is a stand-alone argument. However, I do believe that it goes to And how has it been preserved for our review without an objection? So why the objection and the sustained objection from the judge at the trial level? And this brings a good point as well. With any ineffective claim, as the court well knows, that we have a two-pronged approach. We have to show that it falls below an objective, reasonable standard and that the outcome would have been different had there not been errors on the part of trial counsel. And what I'm asking the court to do is to look at, well, trial strategy is clearly accepted from that analysis. When you look at the whole of a series, it belies the strategy argument. When you look at several things, if we can see a pattern that shows a specific trial strategy, of course, that is accepted from the ineffective assistance claim. But this is one of many things that happened in the course of this three-hour trial that deprived this young man of a fair trial. I'd like to move now to what is primary thrust of Rumbaugh in effective assistance claims, and that is that on the day of trial, as I mentioned before, Taylor was charged with both misdemeanor for consensual criminal sexual abuse based on there being less than five years' difference in age, and also then the felony count of criminal sexual assault, alleging force. And on the day of trial, and... Were they joined for trial? These were two separate charges. They weren't counts one and counts two separate. So they were... I'll have to actually check the record. But they were... I thought there was a misdemeanor number and a felony number. There is a misdemeanor number and a felony number. And were they joined for trial? They were not joined for trial, however, it is in the record that the prosecution elected to proceed on both. So rather than dismissing the misdemeanor and proceeding only on the felony, the prosecution, it's clear in the record, the prosecution elected to proceed on both. They would have to have had the court allow the two charges to be joined, though. So that's correct. I mean, it may just be a formality, but they'd have to... Yes, Your Honor. And it's not clear from the record. It doesn't look to me like there was any official joiner. It's two separate. There's the misdemeanor case number and the felony case number. And you would agree that the misdemeanor is not a lesser included, or would you agree? I disagree. I believe that the misdemeanor is a lesser included. And this is... Not only is that because this was a consent case, the prosecutor in the trial transcript, the prosecution, because this was all on the record, the prosecutor refers to it as a lesser included. And what happened was that, of course, on the advice of counsel, Taylor pled guilty to the misdemeanor charge. Well, if it's a lesser included, then that would vacate automatically, would it not, the conviction for the felony? So, well, that's not what happened. No, well, that's not what's argued either here. So, correct. What our argument is that because it was a consent case, that the jury, rather than plead, when the state said they were going to proceed on both, that gave the defense the perfect opportunity, even had they not had some fact, but even had they not, when this is a consent case, to do a jury instruction and give this jury the opportunity to find Taylor guilty of the lesser included offense. Was that argued during closing argument? It was argued that he had already pled guilty to what he was guilty of. So Mr. Feldman did refer to it in his closing argument, that he already pled guilty to what he was guilty of. And this defendant's being contrite and honest, and this is really what happened, ladies and gentlemen. That was his. The jury didn't buy it then. That was his argument. But we believe, and in fact, another interesting part is that the jury actually sent out a note during their deliberation, and they wanted a transcript of the alleged victim's testimony. And, of course, they were not provided with that, and everyone was in agreement there. But this jury clearly had some questions on the alleged victim's testimony, which I mean bolsters that there may have been some question about consent defense. And while he touched upon, Mr. Feldman touched upon in his closing argument that he pled guilty, here again I don't think that could be considered a sound strategy, whereas that should have been left in the hands of this jury. When we have a consent defense, leave it up to the jury to decide whether or not this was a consensual, that this was a consensual act. The defense called one witness, and she was a young lady named Shelby Dunaway. And the defense called her to testify that the alleged victim had spoken with her and had not said that this was, that she was forced at all. That was the only witness that was called. There were three other people, three people in the room when this alleged assault occurred. There was Mike Pizzo, there was Duran Docklands, and Taylor Killen, and obviously Shana. Is there anything in the record to indicate what they would have testified to if they were called? There is not, and it's a practical matter. And the appellate prosecutor, rightly so, called us on it. And it was just something that wasn't possible to obtain affidavits from these folks. And so what I bring to the attention of the court, and I understand that the rules are the rules, but I bring that to the attention of the court to yet again say that there was a pattern here of things that were missed. We are not saying that Taylor did not get a fair trial because of one error, but a series of things that did not happen that should have happened for this young man, who, by the way, had never been in any trouble before. He was a young man, no juvenile history, no history whatsoever. But I bring that to the court's attention to show that there was a lack of strategy. Mildred Hensley, this occurred at the home of a woman named Mildred Hensley. And she was actually at the house when this, what was alleged to be pretty violent assault by not one but two young men. And Mrs. Hensley gave a statement to the police. She was not called by the defense, but Mrs. Hensley gave a statement that she heard nothing other than music, and that the music wasn't too loud. And what was alleged is that they were playing video games, and that not only did the defendant, but also Mike Pizzo grabbed her and forced her down. Mike Pizzo was sentenced to time served, and he was not called by the defense. So Mike Pizzo did not have anything, any pending charges. His case was over, and he could have been called. How do we know he wouldn't have incriminated the defendant? I mean, we can just as easily assume that he would have incriminated him as opposed to given exculpatory testimony. So because of the basis of his prior statements, if he testified consistently with what he had told police, which was that they were wrestling around. But he pled guilty, though, to what? He did. He pled guilty. And I do not have that, because it was not part of the record. But he received time served in the county. So I do not know whether he was charged with misdemeanor or felony. And we don't know either, because it's not in the record. It is not in the record. It is not in the record. But what we do know is that he did not have a pending case at the time that Taylor went to trial. Thank you. During the victim's testimony, Mr. Feltman cross-examined her regarding some inconsistencies with the circumstances surrounding the video games that they were playing. And I just reserve for rebuttal for the rest of my argument. Thank you. Stacey? Your Honors, Counsel, may it please the Court, my name is Kelly Stacey, appearing on behalf of the people. Certain facts in this case are undisputed. The defendant admits that he had sex with Esty, who was 14 years old. He does not deny that he knew she was 14 years old. And he pleaded guilty to the misdemeanor charge of criminal sexual abuse, that he knowingly committed an act of sexual penetration with Esty, who was at least 13 years of age, but under 17 years of age, and that he placed his penis in the vagina of Esty, and that he was less than five years older than she was. How did that all come into evidence, the way you described that? A quiet way of a guilty plea, Your Honor. Was that then presented to the jury that heard this felony case? It wasn't presented during any part of the case, and she, as opposing counsel referred, Mr. Veltman mentioned it during his closing argument. I was just wondering, how is it in the record, in evidence, what you just indicated? How is that in the record? Did they read, did they show the jury what he pled to, or show them the charge, or how is that in the record? No, the way it's in this current record is that the defendant is arguing that that charge, criminal sexual abuse, is a lesser-included offense of criminal sexual assault. I understand that. The people moved to supplement the record that was granted by this court, because in order to determine if it's a lesser-included offense, courts use the charging instrument approach, looking at does each charge contain an element that the other is not? Do you believe it's lesser-included? I do not believe it's a lesser-included offense. I don't think there's any solid case law for that. Defense counsel was unable to present any case law to that effect. Is that before us in these briefs? In the briefs, I believe what's before you is that it's not sufficiently briefed that it's a lesser-included offense. I think the evidence is totally contrary to that. Same question I asked opposing counsel. Were these cases joined? Was there a motion to join these for trial? There was not. It seems, in my experience, an unusual way to proceed, to have, number one, two separate files. You'd normally just have one file and count one and count two. But with two separate files, wouldn't that require a motion by the people or by the defense to join them together? Otherwise, you'd have to have two separate trials for the same charge or the same act, basically. Well, it didn't reach that point because the defendant had already pleaded guilty. And the reason that the defense counsel said, I think you should go ahead and plead guilty to this, is because the defendant admitted to the police that he had sex with that steed. So that gets rid of the entire defense under the criminal sexual abuse charge. There were some discussions during the course of the proceedings through the various hearings about whether the state was going to proceed on both charges, and the state did intend to proceed on both. Judge Diamond alluded to, how was the jury made aware of this, that he'd already pled guilty? It was only in the closing argument of defense counsel. That's not evidence. That's correct. He didn't testify. They only called one witness. That's correct. The defendant himself didn't testify. He did not testify, no. He could have gone up there and said, yeah, I did it, because I just pled guilty this morning to it. That's correct. That's what I did, ladies and gentlemen of the jury. I'm contrived. I'm sorry for it, or whatever. And because of that, it's really not a part of the record of what the jury heard. It's not a part of the proceedings in that jury trial. But it's certainly not a lesser-included offense. The charge of criminal sexual assault requires the use of force be proved. And even assuming, let's say defense counsel's correct that criminal sexual abuse is a lesser-included offense of criminal sexual assault, assuming just for the sake of argument, given the overwhelming evidence on the use of force in this case, it's highly unlikely that the jury would have latched on to the criminal sexual abuse and totally ignored that force was used in the case. That likelihood is slim to none. Was it reasonable for the jury to have found the use of force in this case? Yes, it was. The evidence presented was that SD was only 5 feet 4 inches tall, weighing 91 pounds. The defendant, 5 feet 9 inches tall, weighing between 160 to 170 pounds. The defendant left a bite mark just above SD's right knee during the assault. The defendant and another male came up behind SD, grabbed her, and carried her off to a bed. One grabbed her under the arms while the other grabbed her by the ankles. SD kicked and swarmed the entire way into the area where that bed was located. The men threw her on the bed and began removing their own clothes. SD tried to get off of the bed. They pushed her back down. Both men began holding her down on the bed. One had her shoulders, the other had her legs held down. SD was trying to escape from their grasp the entire time. She pleaded with them to leave her alone and to let her go, but the struggle continued. SD struggled so much so that they had to call a third man to try to help hold her down to accomplish this act that they had intended to commit that day. SD continued to fight with all three of them. She kept pleading with them to stop, asking them to stop. Finally, the third man, his conscience must have gotten better of him, and he left the area. Eventually, the second man left, and this left the defendant along with SD. At that point in time, he moved her underwear over to the side, overcame her will, sexually penetrated her, and ejaculated. That was the evidence that was presented to the jury, evidence of, in my opinion, overwhelming evidence of the use of force. Defense counsel did the best he could with what was presented to him in this case. I believe it's a largely indefensible case, and the defendant cannot show that but for any alleged error, the result of the proceeding would have been any different. He now claims that additional witnesses should have been called by defense, but he fails to present any evidence of what that purported witness testimony would be. The record shows none of these witnesses was in the room during the time that sexual assault was completed. It was the defendant, and it was the 14-year-old victim who were in the room at that time. Defense further insists that the attorney failed to pursue alleged prior inconsistent statements of SD, but the record shows rather than use a cold police report to try to impeach her statement, he called a long witness in, one of SD's classmates who was also a minor. This classmate testified, well, SD told me that the sex was really consensual and that he didn't commit a sexual assault on her. It's hard to imagine better a presentation or an attempt to impeach a witness than to bring in live testimony rather than trying to use a cold record. The defendant also feels his attorney should have cross-examined SD about her prior sexual history. Under the rape shield laws, this would have been inadmissible, and the state's motion in limiting to that effect was granted. SD's friend, Devin Cole, testified that SD confided to him that she was sexually assaulted by the defendant. The defendant now claims, well, defense counsel should have cross-examined Devin about his relationship with SD. What he fails to mention, however, is the record clearly shows that the state, on direct exam, had already asked Devin his relationship with SD. He said they were just friends. He didn't even know SD's last name, so that lends a tremendous amount of support to the fact that they probably weren't dating. They probably were just friends, and that's why she picked up the phone and called him and confided in him. The defendant cannot show that defense counsel's performance fell below an objective standard of reasonableness, and but for counsel's alleged errors, the result of the proceeding would have been different. The defendant next claims he didn't receive a fair trial because the treating emergency room nurse testified that vaginal tearing is uncommon in cases of sexual assault. What the record shows is that the question the state asked was whether or not the absence of vaginal tearing is an indication that sexual assault did not occur. Defense counsel objected to that question, and the trial court sustained the objection. The state had previously asked, however, without objection, how common is it to see vaginal tearing in a case of sexual abuse or sexual assault? The nurse said it's uncommon. That's the allegedly offensive material that came in before the jury. I don't see how it is prejudicial. Defense counsel had already opened the door to the issue of vaginal tearing when he questioned that witness. The defendant's last claim concerns the propriety of Devin Cole's testimony about his phone conversation with S.D., where she told him the defendant sexually assaulted her. He complains that that conversation took place eight hours after the alleged assault. We believe the record shows it's closer to five hours, but even if you assume that it was an eight-hour delay, courts have found that even a report that took place the next day was still admissible under the corroborative complaint exception. In this case, the defendant was competently represented by counsel. It was reasonable for the jury to conclude that the defendant forcibly sexually assaulted 14-year-old S.D., and it was reasonable for defense counsel to recommend a guilty plea to what the defendant had already admitted he had done. That was to have sex with S.D. The defendant received fair trial by a jury of his peers, and the verdict deserves to be affirmed. The people, therefore, respectfully request the support behind the decision of the trial court. Thank you. Thank you, Counsel. Rebuttal. Sam. Thank you. I certainly mean no disrespect to opposing counsel. The testimony that she just described of pleading and this violent attack is not the same transcript that I've read. And I've reviewed it because the victim speaks not long. Her testimony was not very long. And I reviewed it to see if there is something that I've missed. What is the violence of this attack? I want to speak to focus on the victim's testimony and how that testimony was put to the test through cross-examination. Before I get into that, I'd just like to address one other thing. Going back to April. How common? The defense counsel asked the question about her observation of the alleged victim, whether there was vaginal tearing in the case of this alleged victim. Defense counsel did not open the door to have her give expert opinion testimony. When she said how common, the question was how common is the incidence of vaginal tearing in cases of sexual assault? And she said it's uncommon. She was giving an expert opinion, which was the exact objection that had been sustained. And there was no instruction that that be disregarded by the testimony. And that was the last words that this jury heard from April. The cross-examination of the alleged victim, rather than using the police report, as counsel correctly pointed out to this court, rather than using the police report to point out the inconsistencies in her story, the defense counsel chose to call one witness. And this witness testified only that the alleged victim did not tell her that she was forced. I said at the beginning of this that I respect Mr. Beltman, and Mr. Beltman has been doing this a heck of a lot longer than I have. But to not confront the alleged victim with the glaring inconsistencies in her story from the police report and her statements to the police, and to not confront her with them, cannot be considered sound trial strategy. It falls below what a reasonable attorney would have done. And the outcome of this case, when the jury is tasked with determining the credibility of a witness, and that witness's testimony was not put to the test when being confronted with glaring inconsistencies, this defendant was denied the right to a fair trial. Witness bias. Devin Cole was asked one question, what was your relationship at the time? The prosecution asked, and the prosecutor was careful, and they asked specifically, what was your relationship at the time you were friends? Police. The, Devin Cole says that he didn't even know, that he didn't even know her last name. Well, that's not what he told the police. And yet when he testified at a trial that he didn't know her last name, that on its face should have been challenged, and it was not. There was a series of things that happened in this case that could have given a different outcome. The last thing that I want to address is the hearsay testimony that was presented. Finish your thought, counsel. Thank you, Your Honor. Hearsay testimony was allowed. The judge specifically said that he, in order to make a ruling on whether or not this hearsay testimony as to what Shana told her boyfriend would be allowed, would matter about the time frame in which it was reported. And the exception that was claimed to allow this testimony was the prompt reporting, not corroborative complaint. And outside the presence of the jury, it was determined that this phone call happened at 8.30. The judge specifically said that before he ruled on it, that if it happened a couple hours later, if it happened at 6 p.m. or at midnight, that would make a difference in his ruling. And we believe that the judge did make an error in allowing that hearsay testimony. With all of these things that happened, we respectfully ask this court to give Taylor another trial, to let the witnesses against him be properly confronted, and allow a jury to make a ruling hearing all the evidence and not any improper opinion evidence. Thank you. Thank you, counsel. We'll take the matter under advisement and get back with you in due course. We recess for ten minutes. All rise.